Good morning, counsel. Mr. Cohn, please proceed when you're ready. Thank you, Judge. Good morning. The issue in this case is whether there was sufficient allegations of probable cause to support the issuance of a search warrant for the search of the home of Mr. Payne. The search warrant was, and the parties agree on this, defective in that it failed to cite the correct statute. I mention that because the Superior Court judge who eventually signed the search warrant repeated that error in his authorization of the search, strongly suggesting that he had not taken the trouble to read the statute for which a search was being sought. Beyond that, the reaction of the Superior Court judge upon reading that Mr. Payne had heard gunshots outside his home, had had his cousin run into the home wounded, and had gone outside his home with a firearm to see whether the threat was still going on, the reaction of the Superior Court judge to the police officer who submitted this affidavit should have been, you've done a textbook job of identifying a poor Second Amendment protected conduct. Conduct is happening in the home, and he's acting in self-defense. Why do you want me to authorize you to search every part of this person's home for, as you put it, firearms, ammunition, and so forth? Let me ask you this. If this had been raised at trial as a defense, the government would have had to disprove self-defense beyond a reasonable doubt, right? Because self-defense could have been an available defense to the unlawful possession allegation, right? No self-defense instruction was requested at trial where the burden was to prove beyond a reasonable doubt. The burden to get a search warrant is probable cause, which is multiple magnitudes less. So how is it that in a case where defense counsel didn't even request a self-defense instruction at trial, it was fair for the judge to sign a search warrant and find no probable cause? At trial, Judge, now we've got lots of evidence coming in. In addition, to be very concrete, evidence that's not in the affidavit submitted, I'm not sure I'm pointing in the right direction, to the Superior Court judge. So we're talking about two very different inquiries. One is looking at the affidavit. Has this affidavit laid out anything other than protected conduct under the Second Amendment? Whereas at trial, the defendant has to, the defendant's counsel has to make a strategic call. Okay, given all the evidence against my client, including evidence of what, that's not included in the affidavit, for example, what happened say before the shooting, is this really going to be a viable claim? So those are two, Judge, two very, very different inquiries at two different, very different stages. One is happening in the Superior Court across the street, and the other is happening at trial in this courtroom. Is it your position that there was not probable cause for the offense listed in the affidavit, which was DC Code 22-4503? That's correct, Judge, yes, and I think the government is conceding that. And that is because? Because that offense is the offense of being a felon or a prohibited person in possession of a firearm, and there's nothing in the affidavit that suggests that Mr. Payne was a prohibited person, and in fact, at trial, and now still today, he was not a prohibited person. So the, I mean, there's lots of case law about kind of typos and technical defects in warrants. The warrant itself says that the, that the offense at issue was carrying a pistol without a license, and the DC Code provision was one digit off. So why shouldn't we essentially presume that the, that the judge signing the affidavit obviously believed that the offense at issue was carrying a pistol without a license, not being a prohibited person in possession? One answer to that question is the very first words as I start to speak. In his authorization, the Superior Court judge repeated the incorrect 4503 statute. So it becomes, and the significance of that judge, I mean, candidly, I've made typographical errors. I understand the case law that you just referenced, but here we're looking at whether a Superior Court judge actually examined the way the Constitution wants, it requires a judge to do. But the authorization repeated essentially the same typo. That's right. But in parentheses said carrying a pistol without a license. So let's move off the typo, although the typo has some significance. The question then becomes carrying a pistol, and there I would come back to the Second Amendment. The conduct that's laid out is poor, poor constitutionally protected conduct. And it's important to note, it's not just today or tomorrow. By in 2022, when these events were happening, this court had decided the Wren case. And the Wren case said that both in a home and outside a home, carrying a pistol for self-defense is poor Second Amendment protected conduct. Not me, it's this court saying that. So when the police... By 2022, hadn't the D.C. Court of Appeals disagreed with Wren and said that this statute is constitutional? No, I'm talking about the constitutionality, Judge, and it's important to understand, I'm not talking here about the constitutionality of a statute. I'm talking about the scope of the Second Amendment. And I want to repeat what I said at the very beginning. Someone reading that affidavit would have said this is an outstanding job of describing poor, protected Second Amendment conduct. It's not a question, which by the way, Judge, as you may know, is pending in the D.C. Court of Appeals across the street. It was argued late last year of the validity of the license requirement. That's actually under scrutiny right now. But whether D.C. can even require a license for us to have pistols in our home. But that's not the challenge here. The challenge here is to look at the affidavit and to say this affidavit lays out a great example of protected Second Amendment conduct. I'm not issuing a search warrant for this. I don't understand the difference between unconstitutionality and constitutionally protected conduct. And wouldn't the question just be whether the statute is constitutional as applied to that conduct? I don't think it's an as-applied case, Judge, because to in a way get back to Judge Wilkinson's question, as-applied challenges come up when you're challenging an indictment or a conviction or where you're trying to wipe out an entire crime. But that's not what my briefs are about and what this argument is about. The briefs here and the argument is when a reviewing judge under the Fourth Amendment is looking at the conduct described, the judge and the police who submitted it had to realize this is not a crime. This is protected conduct. And I don't think it's a crime. It might be a crime. I mean, it's not mutually exclusive whether something is denominated as a crime by statute and whether it's constitutionally protected conduct. The way that intersects in a way that allows somebody to determine whether that in fact is constitutionally protected conduct is whether the statute can constitutionally prohibit it. If it can, then it's not constitutionally protected conduct. For those purposes, the statute can validate and predict it. And I guess all of this, this whole colloquy just illustrates that these questions can be quite nuanced and complicated. And we're talking about an approval of a warrant. At that stage, a judge who's looking at a warrant is supposed to do all this constitutional inquiry to try to figure out the conduct that's described in the affidavit, the statute, and let's just assume it's the right statute, as you rightly did. Let's assume that, and then we have a statute that covers it. And a judge that's thinking about a warrant is supposed to look at that and figure out at that stage, as opposed to later, somebody can raise a defense. But at that stage in deciding whether to authorize, whether to issue a warrant, whether the statute can constitutionally be applied to the conduct that's described in the warrant affidavit, that seems like expecting quite a bit of a judge who's signing off on a warrant. No, Judge. Not only do I not think it's expecting quite a bit, I think that's the reason the police should not have even submitted an affidavit. That's the significance of this court's decisions on the Constitution. They don't just affect judges and lawyers like me. They affect the entire country, all citizens. And that's why you can raise a constitutional defense if the charges go forward. And maybe there's a civil suit you can bring under 1983 or something. But do you have a decision where this has happened, where a warrant was, where somebody in the posture that you're in, got the fruits of a search invalidated on the theory that the warrant should have never issued because the conduct was, as you put it, constitutionally protected? If there is such a case, it's probably in my brief, Judge, and I can't think of it offhand. But I think one helpful way of addressing your question is, in the case that I was referring to with Judge Garcia, one that involves the constitutionality of this licensing scheme, one of the things the parties are going back and forth against about, fully briefed at this point, is whether or not this licensing scheme imposes, and I don't want to use the word burden, and they have different words for burden on citizens, that infringes the Second Amendment. And if I am in my home, if a citizen is in his home and has shots gunned outside, a family member runs in wounded, he takes a gun, by the way, it may not even be his own gun, and goes outside and scans to see if the threat is still going on. It is a burden on that person to then, oh, you did that? Well, guess what? We're going to do a search warrant of your entire home based on what you did. The fact that all these courts, including this court, have said that is core Second Amendment protected conduct. Sorry, we're going to repeat that and say we are now searching your home because you told us you're not licensed. The question that this is core Second Amendment protected conduct, I think, is a little more complicated than what making it out is. I mean, you have a right to self-defense to the threat of imminent bodily harm. There's a shot, and even in the affidavit, the detective says that when he spoke with Payne, Payne said he didn't witness the shooting. His cousin ran in. The car was gone down the street. So, the imminent threat, I mean, you put yourself in danger going outside. Everyone who, it would be different if there were evidence in the warrant that there was someone still outside or that there was shooting or that the shooter might still be in the vicinity. But what's in the warrant is that the car is fed by, shot at his cousin, his cousin runs in, the car is gone. So, why isn't that probable cause, at least probable cause, that going out with a gun at that point without a license is a crime? Because maybe if there were still a threat, an imminent threat, it might be self-defense. But where's, where is the evidence of imminent threat in this warrant? Judge, I'm glad you used the word threat because the word threat is in the affidavit. And the police recounts that as soon as Mr. Payne realized there was no more threat, I don't have the exact words, he went back into the house. So, he's responding to a perceived threat. And once he sees there's no threat, he goes back into the house. And so, yes, Judge, and then expanding a little on that. You said there is no longer a threat when he goes back in. That doesn't mean that there was a threat when he went out. Well, there's not an answer to that is there's no finding on that whatsoever, Judge. And I mean, it would be really odd for this time. I mean, you want us to litigate this warrant as if, like, we're at a trial or, you know, a detention hearing or something? No, Judge, I mean, you're not. We look at warrants. It's rather, you know, a neutral, detached magistrate kind of using their common sense and say there's probably a cause that a crime was committed here. And what's the significance, too, of when Payne's interviewed, he says, oh, that's not a gun. I don't have a gun. That's consciousness of guilt, right? That's he immediately followed up. Let me if we can deal with the threat thing and then that statement. I mean, my response to that, he immediately follows by that by saying, I want a it's not that the statement was not admitted during trial. That's not the kind of statement that's going to suffice to show probable cause. But, Judge, it's a statement that that's not a gun when there's a photo and he matches a description of the person in the photo with the gun. That doesn't change the Second Amendment analysis that he says that's not a gun, Judge. And to state again, to stay with your with your description of a threat. I mean, I think the Second Amendment, candidly, is, as I've read the cases, is broader than you say. It's not saying, OK, the threat ended right here. So at this point, he's he's no longer protected by the Second Amendment. We're all human beings when people get shot and run into our home wounded. Our perception of the threat is going to be different based on different human beings. Some can be as the ones that the government describes in its brief, stay in the home, stay quiet, wait for the event to pass. There are others whom the Second Amendment protects who take such threats with more emotion and and human emotion and would go out to make sure that their family was safe. Sure, my colleagues don't have additional questions for you this time, we'll give you a little time for rebuttal. Thank you. Mr. Hansford. Good morning and may it please the court. Eric Hansford for the United States. The Good Faith Doctrine quickly takes care of the Fourth Amendment issues in this case. And on those Fourth Amendment issues, I think it's worth starting where Judge Wilkins questions left us, which is that this is not a self-defense scenario, at least not so clearly a self-defense scenario as to defeat probable cause by the defendant's phone account that's given in the affidavit. He is inside the safety of his home when he hears gunshots outside. His cousin then runs back inside. At that point, he is in his home safely. His cousin is in his home safely. There's no clear grounds for going outside in self-defense. Self-defense is a doctrine of necessity, a defense of necessity, and it is not something that can be invoked by running outside with a gun and trying to fire back. And at least it's not so clearly that sort of doctrine that it would defeat probable cause. And then we get an additional layer of deference through the Good Faith Doctrine. There's also no defense of others. There's no defense of property claims here. And so for all those reasons, this was not the sort of scenario where potentially you would have a magistrate or a superior court judge denying a warrant based on that. What would be that scenario? So if you have a situation in which the warrant affidavit itself is in the area of conduct that could be constitutionally protected in the sense that there couldn't be a statute that could apply to prohibit it. So then, I mean, I think, so that what I was just talking about is kind of factual problems with, then I think there's a whole another set of potential legal problems, which is that we have a licensing regime in the District of Columbia that's been upheld by this court and Wren. Bruin, after this court, suggests that that is constitutional as modified by Wren. The D.C. Court of Appeals has upheld that licensing regime even more broadly than Wren at the time. And there are no cases that the defense has cited that would suggest that a facially valid licensing regime under the Second Amendment must give way in scenarios of self-defense. Maybe that is the case, but a warrant affidavit is not the for litigating that sort of claim. I think the Michigan v. DeFilippo case that we cite in the briefs, which is discussed in the Hind v. North Carolina case, that's that sort of scenario where the court says even once there's a facially valid ordinance, the police are allowed to make arrests based on it, even if that ordinance is later struck down as unconstitutional. The fact that made arrests based on that, that's supported by the Fourth Amendment, and the police don't have to second-guess the constitutionality of statutes. So I think that's a separate legal problem. And then what about the judge who issues the warrant? Same scenario. I mean, there's no reason that a judge has to be second-guessing the constitutionality of seemingly facially valid statutes, or at least there's no cases cited that would suggest that. And that's particularly the case when that statute, that specific statute, has been upheld both by this court and the D.C. Court of Appeals. But there is a self-defense. The defense of self-defense is available to someone who doesn't have a license and carries a pistol outside of their home. That's correct. Under D.C. law. It's used every day in Superior Court. I used to use it. Yeah. So to the extent that this warrant can be read as there's a shooting, family member is shot, don't know where the shooters are, whether they're still in the area, one picks up a gun even if they don't have a license to go investigate whether there's still a threat, why isn't that in the range of self-defense? So one, I think, whether that's in the range of self-defense at trial and for, you know, beyond a reasonable doubt is a very different question for whether it would defeat probable cause. But I think self-defense is a doctrine of necessity. What we say in the Robert Brown case from the D.C.C.A. that we cite in the briefs, you can't leave a safe haven and go out with your gun. That's not self-defense. When you are leaving a safe haven to try to fire back, that's not self-defense. And again, certainly not self-defense on the kind of deferential probable cause scenario. And I do think it's notable that the very competent counsel who tried this case below said, I'm not raising a self-defense claim in this case. And I do think that's informative in terms of whether it would so obviously defeat self-defense as to invalidate the warrant under the good faith doctrine. Can I just ask as a legal matter, unless I don't want to... Go ahead. Just as a legal matter, if it's a defense, at the warrant stage, is a judge who issues a warrant expected to treat with a potential defense? Or does the judge... I just don't know the answer to this. Does the judge just not even take into account defenses because just don't know whether the defense is going to be asserted or how it's going to might be... Don't even know there's going to be a trial. Don't even know the crime is committed. We're just talking about probable cause. Right. So the briefing does not get into this issue, but I did kind of briefly look at it preparing for argument. It seems like different courts take different positions. I think in the 11th Circuit and the 9th Circuit, an 11th Circuit site, it's an unpublished case, but it collects published cases. Rickerson v. Jeter, 2022, Westlaw 2136017, collecting a bunch of 11th Circuit cases says, we don't even need to worry about police officers. These are in the 1983 qualified immunity context, but saying police officers can execute an arrest warrant once they have probable cause as to the elements, and they don't need to worry about affirmative defenses at all. Then there's a contrary position taken by the 6th and 7th Circuits. The 7th Circuit case, Brunson v. Murray, 843 F. 3rd 698. They say police don't have to investigate affirmative defenses, but if there's a very clear affirmative defense, they can't ignore that. So I think that's kind of where the case is. My understanding is that the latter is the majority position, and it's a position, to me, that makes the most sense. I mean, if you have a situation where the warrant says a person is attacked and being beaten and stabbed by several assailants, and then in the process of that, he pulls out a gun and shoots and kills one of the assailants, and that's what's in the warrant, I think there would be ample case law that there's no probable cause for carrying a pistol without a license or first-degree murder or any sort of homicide on those facts. Yeah, the police don't have to investigate, but what they have points completely at a self-defense scenario, not at a crime. So as I said, I haven't gone, I trust the court's kind of representations. I haven't gone deeply. I do read the 11th Circuit and 9th Circuit cases as potentially contrary to that, and this issue obviously isn't brief. I do think it's worth noting that this is a search warrant context as opposed to an arrest warrant context, and so I think if you have, you know, for example, a homicide and potentially it appears to be self-defense, I think you would still expect the police to be executing search warrants as part of the homicide investigation. They wouldn't be cutting off the investigation because initially it appears to be self-defense. They'd still be investigating it, and then maybe you're not bringing charges, and that maybe you're not bringing an arrest warrant. There still has to be probable cause that a crime was committed. There does, but I think how affirmative defenses play into that, at least on my quick read of the it's just unclear, but again, that's certainly not briefed in this case, and I don't think is presented by this factual scenario where there is not a clear self-defense that would apply. You know, I think in this scenario, we would be comfortable defending this as a conviction based purely on these facts, kind of beyond a reasonable doubt, but that's not obviously the issue that's presented to this court. I did just want to note quickly on the typo in the warrant. Just to be clear, we're not conceding that it was defective. The warrant was defective as to that. We agree there's a typo, but we think the parenthetical is that carrying a pistol without a license does adequately explain what the grounds are for the warrant in this case. One question on the standard of review. The reply brief cites United States versus Castle to try to suggest that we are in some sense bound by the district board's findings rather than being able to sort of conduct an independent review. Have you looked into that case and can you explain why and when we apply that rule? Sure. So Castle is a case where it's a stop on it, and so there's a motion to suppress based on that. There isn't a warrant in that case, and so the district court is making fact-finding, and this court would defer to that fact-finding but would not defer to the ultimate question on probable cause. I think the Supreme Court case on Ornelas, which I think is 1996, explains that probable cause gets reviewed de novo. Subsidiary fact-finding gets clear air review. I think probably the more helpful case is the is the Glover case from this court in 2012, which is in the affidavit, warrant affidavit context. That likewise says you get clear air review for fact-finding and de novo review for sufficiency of the warrant. But when you have a warrant affidavit, unless there's something like a Frank's claim, in which case you would take evidence, normally you're just looking at the that gets de novo review. If there are no further questions, we'd ask this court to defer. Thank you, Castle. Judge McCohen, we'll give you two minutes for a rebuttal. Thank you, Judge. I want to follow up on Judge Garcia's question about the standard of review. We have here egregiously erroneous findings by the district court, by the district court, the U.S. district court, which said erroneously, and I think it's undisputed, that my client, Mr. Payne, was the shooter. And I think it's important, although I don't want to focus so much on the Second Amendment aspect, that that's a bit of a revealing comment because what the district court was saying, in effect, was this was the aggressor. This was the shooter. This was not the victim of a shooting who's then reacting to the threat. And then there are other errors that are made by the district court. And so, for this court, for the first time, to say, okay, we're going to review all the record here, it would not be, it's not a good case to do that. I also want to address the affirmative defense thing that came up because I think that muddles the issue. We are talking about a search warrant required by the Fourth Amendment. So, we're not talking about whether the defendant is raising, could raise affirmative defenses at trial. We're talking when the self-defense term that we've been talking about is from constitutional law. It's talking about the scope of the Second Amendment right to bear arms. And so, when the police see a person exercising, in this case, it happens to be the Second Amendment, but there's a lot of other constitutional rights out there. And does a description of someone exercising their constitutional rights and says, goes to a magistrate judge, says, judge, give us authority to search this person's home. The answer is, no, you've just laid out very troublesome constitutional issues for me. I'm not going to let you search this person's home. In addition, I see I'm over my time, but just the Second Amendment aspect is the aspect I have focused on. But there are other problems with the affidavit. One of them being that for the first time here in the government's brief, we're hearing that turns out they were searching for the misdemeanor carrying a pistol, not the felony carrying a pistol. Now, as it happens for Second Amendment purposes, and it's important for me to be clear about this, that doesn't matter. Wren has said your right to a firearm and carry a firearm extends not just to your home, but outside your home for self-defense purposes. But still, don't we need a district judge to make a finding? Oh, yeah, this was clearly this kind of violation that the Superior Court judge was asked to issue a search warrant for. Thank you, judge. Thank you, your honors. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Mr. Cohn, you were appointed to represent the appellant in this matter, and the court thanks you for your assistance.
judges: Srinivasan; Wilkins; Garcia